IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| DELANO WILLIAMS, | ) | CIV. NO. 14-00560 BMK-NONE |
|---|---|---|
| Plaintiff, | ) ) ) | ORDER DENYING PLAINTIFF'S REQUEST FOR APPOINTMENT |
| vs. | ) ) | OF COUNSEL |
| 24 HOUR FITNESS USA, INC. | ) ) ) | |
| Defendant. | ) ) | |

## ORDER DENYING PLAINTIFF'S REQUEST FOR APPOINTMENT OF COUNSEL

Before the Court is pro se Plaintiff Delano William's ("Plaintiff") Request for Appointment of Counsel Under the Civil Rights Act of 1964; 42 U.S.C. § 2000e-5(f)(I)(B), filed on December 15, 2014 ("Motion"). (Doc. 3.) The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR 7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii. After careful consideration of the Motion and the relevant legal authority, Plaintiff's Motion is DENIED for the reasons set forth below.

## BACKGROUND

On June 26, 2014, Plaintiff was terminated from his managerial position at 24 Hour Fitness USA, Inc.'s, ("Defendant"), Windward, Oahu Club,

after having worked with the company for nine years.[1] (Doc. 1 at 4.) Plaintiff maintains that his discharge stems from an incident that took place on May 20, 2014, between himself and a front desk service worker ("Employee"). (Id.)

On that day, Plaintiff confronted Employee, a female, who had been insubordinate towards him for a period of time. (Id.) In this meeting, witnessed by another female Service Manager, Plaintiff informed Employee about her attitude and behavior towards him and asked her to explain what, if any, problem she may have. (Id.) After their discussion, Plaintiff, in an attempt to "clear the air to start fresh and resolve the issue," extended his arms halfway towards Employee, "stopped and wait[ed] for her to reciprocate back," and when Employee met Plaintiff halfway, Plaintiff hugged Employee in front of the Service Manager witnessing the discussion. (Id.) It was later brought to Plaintiff's attention that he should not have hugged Employee. (Id.) After their meeting, Employee met separately with the Service Manager. (Id.) Plaintiff was never approached or consulted by the Service Manager, and therefore, Plaintiff was under the assumption that everything had been resolved. (Id.)

The following day, Plaintiff left on vacation. (Id.) When he returned to work, he was notified that Employee was uncomfortable with the May 20, 2014 hug, and Employee had filed a complaint against Plaintiff with Defendant's

---

[1] It appears that Defendant has not yet been served with the Complaint in this action. A Summons was issued on December 15, 2014, (see Doc. 2), but it does not appear from the docket that the Summons was served on Defendant. Additionally, counsel has not yet made an appearance on behalf of Defendant in this case.

Human Resources ("HR") Department. (Id. at 4-5.)

On June 19, 2014, Plaintiff and Employee got into a verbal altercation. (Id. at 5.) Defendant's Club Manager, a male, spoke with Employee and asked Plaintiff to step outside the building. (Id.) After their meeting, the Club Manager spoke to Plaintiff about what had taken place and informed Plaintiff that Employee called the police to file a complaint against him. (Id.) Later that afternoon, Plaintiff was given a written final warning from the club's HR Representative, which Plaintiff refused to sign because it did not address Employee's insubordination towards him. (Id.)

On June 20, 2014, Plaintiff called one of Defendant's HR Representatives in San Diego, a female, and sought support on the written final warning. (Doc. 1 at 5.) According to Plaintiff, the San Diego HR Representative "sided with her HR staff on the decision made," and after going back and forth with the San Diego HR Representative, she hung up on Plaintiff. (Id.) Shortly thereafter, the Club Manager notified Plaintiff that he was placed on administrative leave. (Id.) On June 25, 2014, Plaintiff was asked to meet with the Club Manager and Defendant's District Manager. (Id.) The following day, Plaintiff's employment with Defendant was terminated. (Id.) Plaintiff alleges that the District Manager decided to terminate Plaintiff's employment following the two incidents with Employee and the conversation with Defendant's San Diego HR

Representative. (Id.)

On or about July 11, 2014, Plaintiff filed charges with the Federal Equal Employment Opportunity Commission ("EEOC") regarding Defendant's alleged discriminatory conduct. (Doc. 1 at 7.) On September 17, 2014, the EEOC closed its file on Plaintiff's charge, having determined, based upon its investigation, that

> the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

(Doc. 1-1 at 4.) The EEOC also notified Plaintiff of his right to file suit following its notice of dismissal. (Doc. 1-1 at 4.)

On December 15, 2014, Plaintiff filed this employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., alleging employment discrimination on the basis of gender, retaliation, and wrongful termination. (See Doc. 1 at 4.) Plaintiff maintains that he was working as a manager within a club "dominated by female employees," and that Defendant did not support him as manager, and instead, violated his civil rights "on different levels." (Doc. 1 at 5.) Plaintiff also maintains that his gender equality was violated, and that he was retaliated against after seeking support from Defendant's San Diego HR Representative. (See Doc. 1 at 5.) Plaintiff alleges that as a result

of these events, his membership at Defendant's Fitness Clubs was revoked, and he is unable to renew his lifetime membership that he previously paid $599.87 for. (Doc. 1 at 6, Doc. 1-7 at 1.)

In the instant Motion, Plaintiff seeks the appointment of counsel pursuant to 42 U.S.C. § 2000e-5(f)(1)(B).[2] (Doc. 3 at 1.) Plaintiff maintains that his claim is meritorious, he has made a reasonable diligent effort to obtain counsel, and that he is unable to find an attorney willing to represent him on terms that he can afford. (Doc. 3 at 1.) For the reasons discussed below, the Court DENIES Plaintiff's Request for the Appointment of Counsel.

## **DISCUSSION**

There is no absolute right to counsel in civil proceedings. Hedges v. Resolution Trust Corp., 32 F.3d 1360, 1363 (9th Cir. 1994). A district court is not obligated to appoint counsel in every employment discrimination case, but may do so under "circumstances as the court may deem just." Bradshaw v. Zoological Soc'y of San Diego, 662 F.2d 1301, 1318 (9th Cir. 1981) (internal quotation marks omitted). Under Title VII, the court should only appoint counsel under "exceptional circumstances." DeCosta v. Hawaii, Civ. No. 10-00739 JMS-BMK, 2010 WL 5390130, at *2 (D. Haw. Dec. 20, 2010) (citing Agyeman v. Corr. Corp. of Am., 390 F.3d 1101, 1103 (9th Cir. 2004)). The court must consider three

---

[2] 42 U.S.C. § 2000e-5(f)(1)(B) provides, in relevant part, "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security."

5

factors in requests for appointment of counsel:  (1) the plaintiff's financial resources; (2) the efforts made by the plaintiff to secure counsel; and (3) whether the plaintiff's claim has merit.  Bradshaw, 662 F.2d at 1318.  In addition to these three Bradshaw factors, the court may consider the plaintiff's ability to proceed pro se.  Miljkovic v. Univ. of Hawaii, Civ. No. 09-00064 ACK-KSC, 2010 WL 346450, at *1 (D. Haw. Jan. 27, 2010).  The plaintiff has the burden of persuasion as to all three factors, and an unfavorable finding as to any one factor is fatal to his request.  Id.

**1. Plaintiff's Financial Resources**

As to the first factor, Plaintiff indicates that he is employed by T-Mobile and makes $680 per month.  (Doc. 3 at 5.)  The only additional income Plaintiff received within the past twelve months has been from unemployment insurance.  (Doc. 3 at 6.)  Plaintiff also has $5,700 cash on hand or in a savings or checking account.  (Id.)  Although Plaintiff appears to have the financial resources to pay the requisite filing fees, (see Doc. 5), his ability to afford an attorney is less clear.  Based on the information provided by Plaintiff, the Court is satisfied that Plaintiff does not have sufficient income and asserts to retain private counsel.  Therefore, the Court finds that Plaintiff's financial resources weigh in favor of appointing counsel.

## 2. Plaintiff's Efforts to Obtain Counsel

The second factor requires Plaintiff to "make what can be considered a reasonably diligent effort under the circumstances to obtain counsel." Bradshaw, 662 F.2d at 1319. In Bradshaw, the plaintiff met this threshold by contacting more than ten attorneys, each of whom declined to represent her except upon financial terms that she was unable to meet. Id.

Here, Plaintiff states that he contacted seven attorneys, and generally asserts that he cannot afford to obtain a private attorney and is unable to find an attorney willing to represent him on terms that he can afford. (Doc. 3 at 1, 4-5.) Apart from these general assertions, Plaintiff does not specify why he is unable to meet the terms of representation offered by the attorneys contacted, or why private representation is not possible. Contingent fee arrangements are often appropriate when a plaintiff is able to demonstrate the existence of a valid claim, so it may be that Plaintiff must focus on establishing for counsel why his claims are colorable. See Gregory v. Hilton Resorts Corp., Civ. No. 08-00476 SOM-BMK, 2008 WL 4755672, at *1 (D. Haw. Oct. 23, 2008) (encouraging complainant to make further efforts to secure counsel and provide counsel with details supporting his claims).

Moreover, based upon Plaintiff's representations, it appears that Plaintiff has not attempted to take advantage of free legal services such as those provided by Volunteer Legal Services Hawaii. While the Court recognizes that

Plaintiff has made some effort to retain counsel, the Court notes that greater efforts could be made. See e.g., Turner v. Dep't of Educ., Civ. No. 10-00707 ACK-BMK, 2010 WL 6571413, at *2 (D. Haw. Dec. 13, 2010) (holding that contacting seven attorneys and Volunteer Legal Services Hawaii was not a reasonably diligent effort to obtain counsel). On the present record, the Court finds that Plaintiff has not made a reasonably diligent effort under the circumstances to obtain counsel. Accordingly, the Court finds that this factor militates against appointing counsel.

**3. The Merits of Plaintiff's Claim**

As to the third and final factor, Plaintiff must show that his claim has "some merit." Bradshaw, 662 F.2d at 1319. Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). In deciding whether a Title VII claim has some merit, "the EEOC determination regarding 'reasonable cause' should be given appropriate weight[.]" Bradshaw, 662 F.2d at 1319-20.

In this case, the EEOC investigated Plaintiff's claim and determined that it is "unable to conclude that the information obtained establishes violations of the statutes." (Doc. 1-1 at 4.) Although the EEOC Dismissal and Notice of Rights letter sent to Plaintiff indicates that no certification is made as to whether

respondent is in compliance with the statutes, the EEOC closed the file on Plaintiff's charge and notified Plaintiff of his right to institute a civil action under Title VII against Defendant. (Doc. 1-1 at 4.) In light of the EEOC's conclusion, the Court cannot definitively say that Plaintiff's claim has "some merit."

Furthermore, upon review of the Complaint filed in this case, the Court is unable to find any factual allegations supporting Plaintiff's claim that Defendant's actions were discriminatory based on gender. Apart from the general assertions that Plaintiff was working as a manager within a club "dominated by female employees," and that he was "treated like a regular employee having a dispute with another employee and not like a manager having to deal with insubordination of an employee[,]" Plaintiff makes no allegation that Defendant terminated his employment on the basis of gender. (See Doc. 1 at 4-6.) Instead, Plaintiff merely expresses dissatisfaction with the way the incident involving Employee was handled in that "24 Fitness did not support [Plaintiff] as a manager," and "he was fired as a result." (See Doc. 1 at 5.) Inasmuch as Plaintiff is unable to articulate specific and key indications of discrimination in employment, the third Bradshaw factor weighs against the appointment of counsel.

## CONCLUSION

On balance, the Bradshaw factors weigh against the appointment of counsel in this case. In addition, the Court observes that Plaintiff's Complaint does

not raise complex issues of law, and he appears capable of articulating the facts and legal issues in court and is therefore seemingly able to proceed pro se. See McCue v. Food Pantry, Ltd., Civ. No. 08–00129 ACK–KSC, 2008 WL 852018, at *3 (D. Haw. Mar. 28, 2008). As noted above, the appointment of counsel in employment discrimination cases is discretionary, and there is no constitutional right to counsel. Indeed, the Court notes that in most cases it cannot expend public resources to provide plaintiffs with counsel. Id. Accordingly, because "exceptional circumstances" do not exist here, Plaintiff's Request for Appointment of Counsel is DENIED.

The Court advises Plaintiff that he must represent himself pro se unless and until he is able to retain counsel and counsel enters an appearance in this case. Pro se litigants are responsible for complying with all of the applicable court rules and deadlines. Motoyama v. Hawaii, Dep't of Transp., 864 F. Supp. 2d 965, 976 (D. Haw. 2012) ("[P]ro se litigants must follow the same rules of procedure that govern other litigants." (citation omitted)).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 30, 2014.



/S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Williams v. 24 Hour Fitness USA, Inc., CIV. NO. 14-00560 BMK-NONE; ORDER DENYING PLAINTIFF'S REQUEST FOR APPOINTMENT OF COUNSEL