IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| DELANO WILLIAMS,<br><br>Plaintiff,<br><br>vs.<br><br>24 HOUR FITNESS, USA, INC.,<br><br>Defendant. | CIVIL NO. 14-00560 DKW-BMK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT** |

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT**

Plaintiff Delano Williams ("Williams") is a former employee of Defendant 24 Hour Fitness USA, Inc. ("24 Hour Fitness"). Following his termination, Williams filed an employment discrimination complaint, alleging that 24 Hour Fitness discriminated against him on the basis of sex and retaliated against him in violation of Title VII of the Civil Rights Act of 1964. Dkt. No. 1. Prior to his employment with 24 Hour Fitness, Williams electronically signed an "Arbitration of Disputes Policy," which "applies to any employment-related dispute" between an employee and 24 Hour Fitness. Dkt. No. 16-4. Before the Court is 24 Hour Fitness's Motion to Compel Arbitration and Dismiss Complaint ("Motion to Compel Arbitration"). Dkt. No. 16. Because a valid agreement to arbitrate exists

that encompasses the scope of this action, and because Williams has not presented any valid defenses, the Court hereby GRANTS 24 Hour Fitness's Motion to Compel Arbitration.

## BACKGROUND

### I. 24 Hour Fitness's Arbitration of Disputes Policy

The arbitration provision at issue is contained in 24 Hour Fitness's Team Member Handbook and is entitled, "Arbitration of Disputes Policy" (the "Agreement"). Dkt. No. 16-3 (Declaration of Marla Loar) at 1-2; Dkt. No. 16-4 (Exh. A). The Agreement applies to current and former employees alike. Loar Decl. at ¶2; Exh. A. Relevant to the issues herein, the Agreement "requires all such disputes to be resolved only by an arbitrator through final and binding arbitration[,]" including claims regarding the "employment relationship," "termination," "harassment," discrimination under the Civil Rights Act of 1964 and claims raised under "state statutes . . . addressing the same subject matters," and "all other state statutory and common law" claims. Exh. A. The Agreement permits informal means of resolving disputes, but provides that if an employee forgoes these informal methods or those methods prove unsuccessful, "the sole and exclusive means for dispute resolution is through arbitration, as provided in the [Agreement]." Exh. A.

When hired, employees are required to initially acknowledge and accept the arbitration procedure set forth in the Agreement, but may opt out of the arbitration procedure by signing an "Opt-Out Form" and returning it to human resources within 30 calendar days. Exhs. A & C. Specifically, the Agreement requires employees to electronically acknowledge and to agree to the following:

> I agree that if there is a dispute arising out of or related to my employment as described in the [Agreement], I will submit it exclusively to binding and final arbitration according to its terms, unless I elect to opt out of the [Agreement] as set forth below.
>
> I understand that I may opt out of the [Agreement] by signing the Arbitration of Disputes Opt-Out Form ("Opt-Out Form") and returning it through interoffice mail to the CAC/HR File Room no later than 30 calendar days after the date I click on the button below. I understand that I can obtain the Opt-Out Form by calling the Employee Hotline . . . . I understand that if I do not opt out, disputes arising out of or related to my employment will be resolved under the [Agreement]. I understand that my decision to opt out or not opt out will not be used as a basis for 24 Hour Fitness taking any retaliatory action against me.
>
> I UNDERSTAND THAT BY ENTERING MY INITIALS AND CLICKING THE "CLICK TO ACCEPT" BUTTON, I AM AGREEING TO THE ARBITRATION OF DISPUTES POLICY (WHICH INCLUDES MY ABILITY TO OPT-OUT OF THE POLICY WITHIN THE PERIOD OF TIME NOTED ABOVE). I ALSO AGREE THAT THIS ELECTRONIC COMMUNICATION SATISFIES ANY LEGAL REQUIREMENT THAT SUCH COMMUNICATION BE IN WRITING.

Exh. A.

## II. Williams' Application for Employment With 24 Hour Fitness

Williams initially commenced his employment with 24 Hour Fitness in April 1998, but voluntarily terminated his employment in December 2002. Loar Decl. at ¶6. Relevant to the instant motion, Williams subsequently reapplied for employment on October 8, 2009. When reapplying, Williams was required to indicate that he understood that an arbitration agreement and opt-out procedure exists: "I understand that as an expeditious and economical way to settle employment disputes without need to go through courts, 24 Hour Fitness agrees to submit such disputes to final and binding arbitration. I understand that I may opt out of the arbitration procedure within a specified period of time, as the procedure provides." Dkt. No. 16-5 (Exh. B) at 3. The application also required Williams to acknowledge that both he and 24 Hour Fitness would be bound to final and binding arbitration if he did not opt out: "24 Hour Fitness and I also understand that if I am offered employment and do not opt out, we both will submit exclusively to final and binding arbitration all disputes arising out of or relating to my employment. This means that a neutral arbitrator, rather tha[n] a court or Jury, will decide the dispute." Exh. B at 3.

After Williams submitted his application for employment, Williams underwent an "onboarding" process, which required him to electronically review and sign a copy of the aforementioned Agreement. Loar Decl. at ¶7. As set forth

in the declaration of Marla Loar, the Senior Director of Human Resources for 24 Hour Fitness, Williams "reviewed, acknowledged receipt of, and agreed to the terms" of 24 Hour Fitness's Agreement as part of 24 Hour Fitness's "on-boarding" process for new employees. Loar Decl. at ¶8. Williams was required to provide his social security number and verify his identity in order for his electronic signature to appear. Loar Decl. at ¶8. Williams was also required to enter his initials on the page containing the Agreement to make his electronic signature appear. Loar Decl. at ¶8. Loar attests that Williams reviewed and acknowledged receipt of a document giving him the option of opting out of the Agreement. Loar Decl. at ¶10. Loar further attests that Williams did not opt out of the Agreement. Loar Decl. at ¶12. To complete the onboarding process, Williams had to verify his identity over the phone by providing his social security number for payroll and tax purposes. Loar Decl. at ¶13.

Williams disputes that he "reviewed, acknowledged receipt of, and agreed to the terms of the company's Agreement once hired." Dkt. No. 18 at 1.

### III. <u>The Instant Litigation</u>

On December 15, 2014, Williams commenced this action, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and retaliation. Dkt. No. 1. In his employment discrimination complaint, Williams alleged that he was wrongfully terminated from 24 Hour Fitness on June 26, 2014

5

following several incidents that had transpired with one of his female co-workers. Dkt. No. 1 at 4-5; Dkt. No. 1-1. Prior to being terminated, Williams spoke with this particular female co-worker about her attitude and gave her a hug at the end of their meeting. Dkt. No. 1-1. The co-worker subsequently filed a complaint against Williams, which he alleges led to his termination without his side of the story being considered. Dkt. No. 1-1.

According to 24 Hour Fitness, Williams did not attempt to resolve his dispute in accordance with the Agreement after he was terminated. Declaration of Carolyn Wong at ¶¶2-3. The parties have attempted to resolve the matter of arbitration informally, but failed to do so. *Id.*

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et. seq.* provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). "The standard for demonstrating arbitrability is not high. The Supreme Court has held that the FAA leaves no place for the

exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir.1999) (citing Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218 (1985)). Indeed, the factual allegations need only "'touch matters' covered by the contract containing the arbitration clause" for arbitration to be triggered. *Id*. (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624 n. 13 (1985)).

In deciding whether to compel arbitration, the court may not review the merits of the underlying dispute. Instead, the court must examine whether: (1) there exists a valid agreement to arbitrate; (2) the parties' dispute falls within their arbitration agreement; and (3) there exists "a defense that would be available to a party seeking to avoid the enforcement of any contract." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir.2005); *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir.1991); *see also Lowden*, 512 F.3d at 1217 ("[T]he court must determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." (citation and quotation signals omitted)).

## DISCUSSION

Williams opposes 24 Hour Fitness's Motion to Compel Arbitration on several grounds, including that he was unaware of the Agreement and that the National Labor Relations Board ("NLRB") has found similar types of arbitration agreements unenforceable. Dkt. No. 18 at 1-2. The Court must first determine whether a valid agreement to arbitrate exists, and then decide whether the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If a valid arbitration agreement exists, the Court must also determine whether Williams presents any valid defenses to the enforceability of the agreement. As set forth below, the Court concludes that the first two issues are resolved in favor of arbitration and that Williams has not raised any meritorious defenses. Accordingly, the Court must "direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

### I. A Valid Agreement to Arbitrate Exists

Courts "apply state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). Under Hawaiʻi law, a valid arbitration agreement must have the following three elements: "(1) it must be in writing; (2) it must be unambiguous as to the intent to submit disputes or controversies to

arbitration; and (3) there must be bilateral consideration." *Douglass v. Pflueger Hawaii, Inc.*, 110 Hawai'i 520, 531, 135 P.3d 129, 140 (2006). As set forth below, all three elements are satisfied.

### A. <u>Existence of a Writing</u>

The parties do not dispute that the arbitration agreement in this case was in writing. *See* Dkt. Nos. 16 & 18. The record reflects that the Agreement was contained in the Team Member Handbook and that Williams, by affixing his electronic signature, agreed that any requirement that the Agreement be in writing would be satisfied. Exh. A. Thus, the first requirement that the arbitration agreement be in writing is satisfied.

### B. <u>Unambiguous Intent to Submit to Arbitration</u>

With respect to the second requirement, "there must be a mutual assent or a meeting of the minds on all essential elements or terms to create a binding contract." *Douglass*, 110 Hawai'i at 531, 135 P.3d at 140 (quoting *Earl M. Jorgensen Co. v. Mark Constr. Inc.*, 56 Haw. 466, 470, 540 P.2d 978, 982 (1975)). Hawai'i courts apply an objective standard in determining whether mutual assent or intent exists. *Douglass*, 110 Hawai'i at 531, 135 P.3d at 140.

Here, Williams was able to view the Agreement in electronic form prior to indicating his acceptance of its terms by providing his electronic signature. *See* Loar Decl. at ¶¶ 7-9. The Agreement stated unambiguously that, by affixing his

9

electronic signature to the Agreement, Williams agreed to be bound thereby. *See* Exh. A. The record reflects that Williams submitted his electronic signature after agreeing to its terms, notwithstanding his assertion that "[h]e was unaware of the arbitration agreement upon being hired with 24 Hour Fitness USA Inc." Dkt. No. 18 at 1; *see* Exhs. A & C.

Specifically, Williams digitally signed the Agreement on October 23, 2009, as part of 24 Hour Fitness's onboarding process for new hires. In order to verify his identity, Williams provided his social security number before signing the Agreement. Loar Decl. at ¶8. Williams does not dispute that he digitally signed the Agreement or that he electronically signed 24 Hour Fitness's Employment Application, which also contained language informing him of the existence of the Agreement.

Williams asserts that he "never reviewed" the Agreement and that he was "unaware" of it until after the commencement of this litigation. This argument similarly is without merit. Under Hawaiʻi law, a person who signs a contract is presumed to know it contents and to assent to them. *See Ling Wo Leong v. Kaiser Found. Hosp.*, 71 Haw. 240, 245, 788 P.2d 164, 168 (1990) ("The general rule of contract law is that one who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained."). Nowhere in his opposition does Williams challenge the authenticity of his signature. Again,

Williams also offers no evidence to suggest that he did not sign the Agreement, nor does he challenge the facts set forth in the declaration of Loar, the Senior Director of Human Resources for 24 Hour Fitness, which establish in detail her basis for concluding that Williams electronically signed the Agreement. *See* Loar Decl. ¶¶8-13. Accordingly, the requirement of mutual assent is satisfied.

### C. <u>Bilateral Consideration</u>

With respect to the last requirement, bilateral consideration, the Hawaiʻi Supreme Court has held that mutual assent to arbitration provides bilateral consideration. *See Brown v. KFC Nat'l Mgmt. Co.*, 82 Haw. 226, 239-40, 921 P.2d, 146, 159-60 (concluding that the arbitration agreement was supported by bilateral consideration where the employee and employer agreed to "forego their respective rights to a judicial forum, given 'the delay and expense which results from the use of the federal and state court systems,' in order to benefit from the resulting time and cost savings").

Here, both Williams and 24 Hour Fitness agreed to submit to binding arbitration and forego their respective rights to a judicial forum. Specifically, the Agreement provides: "This Policy applies to any employment-related dispute between a Team Member and 24 Hour Fitness or any 24 Hour Fitness's agents or Team Members, whether initiated by a Team Member or by 24 Hour Fitness . . . This Policy requires all such disputes to be resolved only by an arbitrator through

11

final and binding arbitration." Exh. A. The Employment Application similarly evinces a mutual assent to arbitration, as provided by the following language: "I understand that as an expeditious and economical way to settle employment disputes without need to go through courts, 24 Hour Fitness agrees to submit such disputes to final and binding arbitration . . . 24 Hour Fitness and I also understand that if I am offered employment and do not opt out, we both will submit exclusively to final and binding arbitration all disputes arising out of or relating to my employment." Exh. B. Thus, both 24 Hour Fitness and Williams agreed to be bound by the Agreement, satisfying the bilateral consideration requirement.

## II. The Agreement Encompasses The Claims At Issue

The Court must next determine whether the agreement encompasses the dispute at issue. *Chiron Corp.*, 207 F.3d at 1130. The Court concludes that the language contained in the Agreement clearly encompasses Williams' sex discrimination and retaliation claims, as they arise out of "the employment relationship" between the parties.

Interpretation of the scope of the arbitration clause is governed by the FAA. The FAA "requires courts liberally to construe the scope of arbitration agreements covered by that Act." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627 (1985). Thus, "in construing an exception to an arbitration clause, all matters will be deemed subject to arbitration unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 860 (9th Cir. 1979). The Court resolves ambiguities as to the scope of arbitration in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

In the instant case, it is clear that the Agreement covers the asserted dispute. Williams asserts a claim for sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and alleges retaliation. The Agreement expressly refers to these types of claims as disputes that must be arbitrated. *See* Loar Decl.; Exh. A. Specifically, "any employment-related dispute" that could otherwise be resolved by a court must be arbitrated, including: (1) claims concerning the "employment relationship," and (2) "claims arising under the Civil Rights Act of 1964." Exh. A. Accordingly, all of Williams' claims clearly fall within the scope of the dispute resolution process to which he agreed.

### III. <u>**Williams Presents No Meritorious Defenses**</u>

In his opposition to 24 Hour Fitness's Motion to Compel Arbitration, Williams challenges 24 Hour Fitness's basis for compelling arbitration by contending that arbitration agreements by which employees waive their rights to participate in class or collective actions against their employers are unenforceable pursuant to the NLRA. Dkt. No. 18 at 2. In support of this position, Williams

attached a press release describing a decision by an Administrative Law Judge ("ALJ") for the NLRB, finding that 24 Hour Fitness's Agreement violated Section 8(a)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158. Dkt. No 18-1. Preliminarily, this Court notes that NLRB decisions that interpret law outside of the NLRA are not binding on this court. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991). Moreover, Williams did not file his claim as a class action, nor does the record reflect that he has attempted to join one. Accordingly, Williams' argument that the Agreement violates his rights under the NLRA because it waives his right to participate in a class action lawsuit is tenuous.

In any event, as pointed out by 24 Hour Fitness, the Ninth Circuit has found no violation of the NLRA in cases in which the arbitration agreement in question included an "opt out" clause that permitted an employee to preserve his or her ability to pursue a class action. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075-77 (9th Cir. 2014) (enforcing an arbitration agreement where plaintiff had "the right to opt out of the arbitration agreement," and holding that, "[h]aving freely elected to arbitrate employment-related disputes on an individual basis," plaintiff could not claim that enforcement of the agreement violated the NLRA). Indeed, courts within the Ninth Circuit have refused to invalidate arbitration agreements containing opt-out provisions on the ground that such agreements violate the NLRA. *See, e.g., Nanavati v. Adecco USA, Inc.*, Case No.

14-cv-04145-BLF, 2015 WL 1738152, at *4-6 (N.D. Cal. Apr. 13, 2015) (enforcing an arbitration agreement where plaintiff was afforded ample opportunity to opt out of the arbitration agreement, but chose not to do so). In the instant case, although an opt-out provision existed, Williams chose not to avail himself of it within the time allotted. *See* Loar Decl. at ¶12; Exhs A & C. As such, the opportunity for Williams to avoid the arbitration procedure he agreed to upon hiring has long since expired.

In sum, Williams has not raised any meritorious defenses or arguments that would provide a basis for this Court to conclude that the Agreement is unenforceable.

## **CONCLUSION**

Because all of Williams' claims must be submitted to arbitration, the Court hereby grants 24 Hour Fitness's Motion Compel Arbitration and Dismiss Complaint (Dkt. No. 16). The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED: July 9, 2015 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

*Williams v. 24 Hour Fitness USA, Inc.;* CV 14-00560 DKW-BMK; **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT**